IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY, BLUEFIELD AND CHARLESTON

**ENTERED**

181   **MAR 23 1999**   135E

SAMUEL L. KAY, CLERK
U. ~~~~~~ & Bankruptcy Co ~
Southern District of West Virginia

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                             CIVIL ACTION NO. 1:98-0690

BLUESTONE COAL CORP.,
a corporation,

    Defendant.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                             CIVIL ACTION NO. 5:98-0726

HERNDON PROCESSING COMPANY, et al.,

    Defendants.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                             CIVIL ACTION NO. 2:98-0728

THE PITTSTON COMPANY, et al.,

    Defendants.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0729

EAGLEHAWK CARBON, et al.,

     Defendants.


WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0730

ISLAND CREEK COAL COMPANY,
a Delaware corporation,

     Defendant.


WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0731

ISLAND CREEK COAL COMPANY,
a Delaware corporation,

     Defendant.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                        CIVIL ACTION NO. 1:98-0732

CONSOLIDATION COAL COMPANY, et al.,

    Defendants.


WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                        CIVIL ACTION NO. 1:98-0760

USX CORPORATION, et al.,

    Defendants.


WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

    Plaintiff,

v.                        CIVIL ACTION NO. 5:98-0761

NATIONAL MINES CORP., et al.,

    Defendants.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0827

EASTERN ASSOCIATED COAL CORPORATION, et al.,

     Defendants.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0851

PEABODY COAL COMPANY, et al.,

     Defendants.

WEST VIRGINIA BUREAU OF
EMPLOYMENT PROGRAMS,
WORKERS' COMPENSATION
DIVISION, an agency of
the State of West Virginia,

     Plaintiff,

v.                          CIVIL ACTION NO. 2:98-0852

EASTERN ASSOCIATED COAL CORPORATION, et al.,

     Defendants.

## MEMORANDUM OPINION

The West Virginia Bureau of Employment Programs, Workers'
Compensation Division, ("Division"), filed each of the above-
captioned cases in West Virginia state court to recover workers'
compensation premiums, interest and penalties.  The complaint in
each case alleges that various companies, including Bluestone
Coal Corporation ("Bluestone"), Eaglehawk Carbon, Island Creek
Coal Company, Consolidation Coal Company, USX Corporation
("USX"), National Mines Corporation, Eastern Associated Coal
Corporation and Peabody Coal Company [hereinafter collectively
referred to as the "Owners"] held permits to own and/or to
operate coal mines located throughout West Virginia.  The
Division alleges that the Owners contracted with certain entities
("Contractors") to provide coal mining services at mines for
which the Owners held permits.  The Division claims that the
Contractors failed to pay workers' compensation premiums during
the time in which they were providing services at the mines.
Through each of these lawsuits, the Division attempts to collect
the unpaid premiums, interest and penalties from the Owners, and
in some of these case, the Division also attempts to collect from
the Contractors, from individuals serving as officers, directors,
and owners of the Contractors, and from subsidiaries and
affiliates of the Owners.[1]

_____

[1] The complaint essentially alleges that the affiliates and
subsidiaries played the same role as the Owners.  The affiliates
and subsidiaries hired contractors, which failed to pay workers'
compensation premiums, to perform operations at mines for which

The Division has essentially asserted three types of claims in each case to recover the premiums:  (1) claims under the "citizens' suit" provision of the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA"), W. Va. Code §§ 22-3-1 to -32 (1994 & Supp. 1998); (2) claims under the West Virginia Workers' Compensation Act, W. Va. Code §§ 23-1-1 to 23-6-1 (1998); and (3) various common law claims, including constructive fraud, breach of contract and unjust enrichment.

On July 27, 1998, Bluestone removed the state case to which it was a party to this court, invoking this court's federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Bluestone asserts that, during the state court proceedings, the Division filed a response to Bluestone's motion for summary judgment, which revealed that the case was actually raising important issues of federal law.

Since then, the defendants in each case removed their respective actions to federal court, relying on the Division's response to Bluestone's motion for summary judgment in the state court proceedings as the basis for federal question jurisdiction. USX and Ted Osborne, the defendants in Civil Action Number 1:98-0760, have additionally removed their case on the basis of diversity jurisdiction.

The grounds for removal in each case center around the Division's claims under the WVSCMRA, which provides as follows:

---

the affiliates and subsidiaries held the permits.  For purposes of deciding this motion, any reference to the Owners in this Memorandum Opinion includes their affiliates and subsidiaries subject to these lawsuits.

> It is a requirement of this article that each
> operator maintain continued compliance with
> the provisions of section five, article two,
> chapter twenty-three of this code [which
> mandate the payment of workers' compensation
> premium taxes based on employees' gross
> wages] and provide proof of compliance to the
> director on an annual basis.

W. Va. Code § 22-3-8(6)(B) (1998).  The Division contends that

the Owners were "operators" under this provision and, as such,

are responsible for all delinquent workers' compensation premiums

incurred by any Contractor engaged in mining operations at a

location for which the Owners held the surface mining permit.  To

enforce this provision, the Division brought a claim pursuant to

the "citizens' suit" provision of the WVSCMRA, which provides:

> Any person or property who is injured through
> the violation by any operator of <u>any rule,
> order or permit issued pursuant to this
> article</u> may bring an action for damages,
> including reasonable attorney and expert
> witness fees, in any court of competent
> jurisdiction.  Nothing in this subsection
> affects the rights established by or limits
> imposed under the state workers' compensation
> laws.

W. Va. Code § 22-3-25(f) (1998) (emphasis added).

The Division's state court case against Bluestone was

further along than its other cases and, upon completing

discovery, Bluestone filed a motion for summary judgment on the

ground that the Division failed to allege, as required under the

WVSCMRA citizens' suit provision, that Bluestone violated a

"rule, order or permit issued pursuant to [the WVSCMRA]."

The heart of Bluestone's summary judgment argument was that

the citizens' suit provision of the WVSCMRA permitted actions

against "operators" solely for violations of "any rule, order or

7

permit issued pursuant to [the WVSCMRA]."  Since the Division only alleged that Bluestone had violated West Virginia Code § 22-3-8(6)(B), which was not a "rule, order or permit issued pursuant to [the WVSCMRA]," but, rather, a violation of the WVSCMRA itself, Bluestone argues, the state court should grant Bluestone's motion for summary judgment.

In response, the Division claimed that it had predicated its claims under the WVSCMRA citizens' suit provision on the violation of rules issued pursuant to the WVSCMRA.  The Division argued that federal law requires the federal Office of Surface Mining ("OSM") to approve each provision of the West Virginia surface mining program, whether a statute or regulation, through a rulemaking procedure.  Therefore, the Division maintains, all components of the West Virginia regulatory program constitute a "rule" within the meaning of the citizens' suit provision of the WVSCMRA.

The Division additionally asserted that Bluestone's failure to comply with workers' compensation premiums violated a rule which provides, "The permitee shall comply with the terms and conditions of the permit, all applicable performance standards of the Act, and the requirements of the regulatory program."  30 C.F.R. § 773.17(c) (1998) (emphasis added).  The Division argued that payment of workers' compensation premiums is a "requirement[] of the regulatory program" and that failure to pay the premiums violates the requirements of the regulatory program within the meaning of 30 C.F.R. § 773.17(c).  Such a violation

8

is, therefore, actionable under West Virginia Code § 22-3-25(f), according to the Division.

Once Bluestone received the Division's response, Bluestone removed the case on the basis of federal question jurisdiction and, anticipating that the Division would use the same strategy in the other cases, the defendants removed the remaining actions. The Owners are now contending that these cases arise under federal law because they raise a substantial question concerning whether the federal rulemaking process can convert a state statute into a federal rule.  The answer to this question will determine two issues:  (1) whether the citizens' suit provision of the WVSCMRA, as part of the state regulatory program, became a federal rule when it underwent the rulemaking process; and (2) whether the "rules" which the Owners allegedly violated are "issued pursuant [to the WVSCMRA]."

The Division has filed a motion to remand each action on the following grounds:  (1) that the defendants' failure to comply with the laws governing the removal process, specifically the untimely removal of each case[2] and the failure to obtain consent from all defendants in certain cases, precludes the court from invoking jurisdiction over these actions; (2) that each case fails to raise a federal question; (3) that each case arises under state workers' compensation law, thereby precluding the removal of each case; and (4) that diversity of citizenship, as defined in 28 U.S.C. § 1332, does not exist in Civil Action

---

[2] The Division contends that the case against Bluestone was removed too late and the remaining cases too early.

9

Number 1:98-760 against USX and Ted Osborne.  In the event that this court finds that it has jurisdiction, the Division has moved this court to abstain from deciding the matters in order to allow the West Virginia state court system to resolve the issues.  The Division additionally claims that it is entitled to an award of costs if this court decides either motion in its favor.

When the defendants removed their respective actions to the Southern District of West Virginia, they were assigned to various judges throughout the district.  The parties informed the court that each case raised the same jurisdictional issues.  Therefore, the court consolidated these cases for the purpose of deciding the pending remand and abstention motions.

**Non-Removal of Claims Arising Under Workers' Compensation Laws**

The laws governing the removal of actions provide that, "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."  28 U.S.C.A. § 1445(c) (West 1994).  The Division claims that the Owners could not remove this action because it arises under West Virginia workers' compensation laws.  The Owners, in response, contend first that none of the claims arise under West Virginia workers' compensation law.  Second, the Owners argue that, even if the Division's claims pursuant to West Virginia Code §§ 21A-2-6, 23-2-5 and 23-2-5a arise under West Virginia workers' compensation laws, this court, by virtue of its federal question jurisdiction over other claims, and diversity jurisdiction over the USX case, may invoke supplemental jurisdiction pursuant to 28 U.S.C.A.

10

§ 1367 (West 1993) over any state claims, including those arising under state workers' compensation laws.

The first issue this court must decide is whether the Division's claims arise under West Virginia workers' compensation laws.  The determination that a claim arises under state workers' compensation laws is a federal, rather than a state, issue.  <u>See Arthur v. E.I. Dupont de Nemours & Co., Inc.</u>, 58 F.3d 121, 125 (4th Cir. 1995).  Otherwise, a state could easily "by definition or characterization enlarge or narrow the cases subject to removal."  <u>Id.</u>

The term "workers' compensation law" means "a statutorily created insurance system that allows employees to receive fixed benefits, without regard to fault, for work-related injuries." <u>Id.</u>  To determine whether a claim meets this definition, the court must examine the fundamental character of the claim and determine whether the claim is integrally related to the operation of the workers' compensation system in that it protects or enhances workers' ability to obtain compensation benefits. <u>See id.</u> at 127-28.

The Owners contend that the purpose of 28 U.S.C.A. § 1445(c) is to prevent federal courts from becoming cluttered with traditional workers' compensation claims in which an employee seeks fixed benefits, without regard to fault, for work-related injuries in states where such actions are otherwise removable, <u>see id.</u> at 124, 128, and an action to collect unpaid premiums does not fall within the types of cases the statute was intended to cover.  The Owners additionally contend that an action to

11

collect unpaid premiums is not an indispensable part of the claims process because workers may obtain coverage for their injuries even if the employer fails to pay its premiums.  The Division, on the other hand, contends that an action to collect premiums is integral to the smooth operation of the state workers' compensation system because statutory coverage is worthless if no money is available to compensate the injured workers.

The definition of workers' compensation laws, as established in Arthur, refers not only to the employees' ability to seek fixed benefits for work-related injuries, but to the "insurance system" that provides such benefits.  Id. at 125.  Therefore, as a general matter, the Division's claims to seek unpaid premiums appear to arise under workers' compensation laws.  The court, however, must determine whether the claims are integrally related to the just and smooth operation of the workers' compensation system and must examine the fundamental character of the claims, particularly the source of law prescribing the substantive cause of action and the right to enter court.  See id. at 127-28; see also Humphrey v. Sequentia, Inc., 58 F.3d 1238, 1246 (8th Cir. 1995); Hanna v. Fleetguard, Inc., 900 F. Supp. 1110, 1118 (N.D. Iowa 1995).  Since the "purpose of § 1445(c) is to give state courts the primary responsibility of handling those matters arising out of workers' compensation laws," Hanna, 900 F. Supp. at 1125, the court should also consider whether rights established pursuant to the state workers' compensation laws are essential elements of the claim, whether the success of the

12

claims will depend on how the corresponding workers' compensation statutes are construed, whether a genuine and present controversy exists with reference to those statutes, and whether the controversy is disclosed upon the face of the complaint. <u>See id.</u> at 1117.

Each of the Division's cases against the Owners raises claims pursuant to West Virginia Code §§ 21A-2-6, 23-2-5 and 23-2-5a. West Virginia Code § 21A-2-6 defines the Division's authority and grants it the power to invoke remedies for enforcement of workers' compensation laws. West Virginia Code §§ 23-2-5 and 23-2-5a require subscribing employers to pay workers' compensation premiums and authorize the Division to commence civil actions against defaulting employers. Each of the cases additionally raises claims pursuant to the citizens' suit provision of the WVSCMRA and various common law claims, including breach of contract, tortious fraud, and breach of trust.

Without appropriate funding, the workers' compensation system would erode. Therefore, as a general matter, the Division's ability to assert a cause of action to seek unpaid premiums is integral to the just and smooth operation of the workers' compensation system. However, only those claims which the court can fundamentally characterize as workers' compensation claims will arise under workers' compensation laws for the purpose of 28 U.S.C. § 1445(c).

While West Virginia's choice to codify or not to codify a provision authorizing a claim as part of the statutory article entitled "Workers' Compensation" is indicative of whether the

13

state considers such a claim to arise under workers' compensation laws, it is not dispositive of the issue.  The Workers' Compensation Act expressly provides the Division, through West Virginia Code §§ 23-2-5 and 23-2-5a, with a cause of action and a right to enter court to seek premiums from defaulting employers.[3] Since the Division's claims under West Virginia Code §§ 23-2-5 and 23-2-5a depend on the existence of rights established in the workers' compensation scheme and the construction of workers compensation statutes, these claims can be fundamentally characterized as workers' compensation claims.

However, claims brought under the citizens' suit provision of the WVSCMRA and the common law, in general, do not depend upon rights established in the workers' compensation scheme or the construction of workers' compensation statutes.  The WVSCMRA, through its citizens' suit provision, and the common law establish causes of action and provide the right to enter court. The mere fact that the allegations concern the workers' compensation scheme is not enough to convert a WVSCMRA or common law claim into a workers' compensation claim.  In other words, if the workers' compensation scheme did not exist, a party could still bring an action under the WVSCMRA, through its citizens' suit provision, for a violation of a rule, order or permit issued

---

[3] This court realizes that the Owners contend that the Division's claims pursuant to West Virginia Code §§ 23-2-5 and 23-2-5a do not arise under workers' compensation laws because they are not "employers" within the meaning of the Act.  The determination of whether the Owners are "employers" within the meaning of the Act, however, depends on the West Virginia courts' interpretation of the Act, which is even more indicative that the claims arise under workers' compensation laws.

14

pursuant to the WVSCMRA, or a party could bring a common law claim.  While, in this instance, the Division's claims are based on the Owners' failure to pay workers' compensation premiums, the Division is merely using these allegations to prove the legal elements of each cause of action.[4]  Since the fundamental character of the claims remains the same, this court finds that the Division's claims under the citizens' suit provision of the WVSCMRA and the common law do not arise under West Virginia workers' compensation laws.[5]

_____

[4] For example, if a plaintiff alleged a negligence claim based on a defendant's failure to drive on the correct side of the road, the plaintiff would merely use any law requiring drivers to remain on the right side of the road as proof that the defendant had a duty to remain there.  Just because the plaintiff alleges the violation as proof of its claim does not convert the claim into one for failure to drive on the correct side of the road.  The plaintiff must still prove each element of the negligence claim to win.

Likewise, in what appears to be a breach of contract claim, the Division alleges that the Owners' breach of a contractual duty to pay workers' compensation premiums on behalf of the Contractors harmed the Division as the third-party beneficiary of the contract.  While the Division happens to allege that the Owners failed to pay premiums, the claim is based on a contract between the Owners and the Contractors.  Any evidence that the Division is the statutory beneficiary of such a contract is merely part of what the Division will have to prove to win damages.  The same analogy applies to the breach of trust and tortious fraud claims.

With respect to the WVSCMRA, the Division could succeed by alleging <u>any</u> violation of a rule, order or permit issued pursuant to the WVSCMRA.  The Division has merely asserted failure to pay workers' compensation premiums as the particular violation.  Just because the Division is using a particular violation to establish the overall claim does not convert the claim to a workers' compensation claim.

[5] This court believes that such a result follows the trend in court decisions interpreting 28 U.S.C.A. § 1445(c).  According

The removal statutes provide:

> Except as otherwise expressly
> provided by Act of Congress, any
> civil action brought in a State
> court of which the district courts
> of the United States have original
> jurisdiction, may be removed by the
> defendant or the defendants, to the
> district court of the United States
> for the district and division
> embracing the place where such
> action is pending.

28 U.S.C.A. § 1441(a) (West 1994).  Therefore, "civil actions

filed in state court are generally removable to federal court

unless an Act of Congress expressly prohibits removal."  Sherrod

--------

to this trend, the decision whether a claim arises under workers'
compensation laws hinges on whether the workers' compensation
statutes or another source provides the cause of action.  The
result of this trend is that an action against a workers'
compensation insurer for breach of duty of good faith and an
action against an employer for deliberately intending to cause an
employee's injuries do not arise under workers' compensation
laws, see Hanna, 900 F. Supp. at 1125 (finding that the duty of
good faith flowing from insurer to insured is a "judicially-
created obligation owed by all insurers and applicable to all
policies of insurance); Arthur, 58 F.3d at 127-28 (finding that
the workers' compensation statute does not create the deliberate
intention cause of action but merely preserves the employee's
right to bring a negligence action created under the common law),
but an employee's action for retaliatory discharge for filing a
workers' compensation claim depends on whether the workers'
compensation statute or the common law creates the cause of
action.  Compare Humphrey v. Sequentia, 58 F.3d 1238, 1245-46 (8th
Cir. 1995) (finding that a retaliatory discharge action arose
under workers' compensation laws because the workers'
compensation statute created the action); Spearman v. Exxon Coal
USA, Inc., 16 F.3d 722, 725-26 (7th Cir. 1994) (finding that a
retaliatory discharge case did not arise under workers'
compensation laws).

In the present case, the West Virginia workers' compensation
statute creates the claims pursuant to West Virginia Code §§ 23-
2-5 and 23-2-5a.  On the other hand, other sources of law create
the common law and WVSCMRA claims.

16

v. American Airlines, Inc., 132 F.3d 1112, 1118 (5th Cir.), on
remand as 1998 WL 159942 (N.D. Tex.), aff'd, 163 F.3d 1356 (5th
Cir. 1998).  As previously mentioned, 28 U.S.C.A. § 1445(c)
prohibits the removal of actions arising under state workers'
compensation laws.  Since these cases involve claims arising
under West Virginia workers' compensation laws, this court must
determine whether 28 U.S.C. § 1445(c) precludes the removal of
the cases in their entirety, or if this court, by virtue of
having federal question or diversity jurisdiction over at least
one claim not arising under workers' compensation laws, may
assert supplemental jurisdiction over the remaining claims,
including those arising under workers' compensation laws.  With
respect to this issue, the Division contends that the former
interpretation is correct, whereas the Owners' argue that the
latter is correct.

A plain reading of § 1445(c) reveals that it prohibits the
removal of actions arising under workers' compensation laws
regardless of whether the court has original jurisdiction based
on diversity or federal question.  See Sherrod, 132 F.3d at 1118-
19.  This court must determine, however, whether § 1445(c)
prohibits the removal of the entire case or just those claims
arising under state workers' compensation laws.  The term "civil
action" seems to refer to an entire case.  Yet, as used
throughout the jurisdictional and removal statutes, the term
"civil action" necessarily refers to a "claim" because if the
term "civil action" referred to an entire case, federal courts
would not have to rely on 28 U.S.C.A. § 1367(a) to assert

"supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). In other words, if the term "civil action" means the entire case, once a court determines that it has subject matter jurisdiction, it would have jurisdiction over the entire case without having to assert supplemental jurisdiction over any remaining claims. In further support of this contention, if the term "civil action" referred to an entire case, Congress need not have enacted 28 U.S.C.A. § 1441(c), which provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C.A. § 1441(c) (West 1994).

Pursuant to 28 U.S.C.A. § 1441(c), if non-removable claims are joined with separate and independent claims over which this court has federal question jurisdiction, the entire case is subject to removal, and the court may use its discretion in asserting supplemental jurisdiction over the non-removable claims. On the other hand, since no removal statute authorizes the removal of the entire case when non-removable claims are asserted pendant to a claim over which this court has diversity jurisdiction, this court may not assert supplemental jurisdiction over the non-removable claims. In sum, if workers' compensation

18

claims are joined with claims over which the court has diversity jurisdiction, the diversity claims are removable, but the workers' compensation claims are not.  Therefore, the court never has the opportunity to decide whether it may assert supplemental jurisdiction over the workers' compensation claims.  If, however, the workers' compensation claims are joined with federal question claims, then all of the claims are removable, and this court may choose to exercise supplemental jurisdiction over the workers' compensation claims.[6]  Hence, this court must determine whether this court has federal question or diversity jurisdiction over any of the common law or WVSCMRA claims.

### Federal Question Jurisdiction

Congress enacted the federal Surface Mining and Control Reclamation Act ("FSMCRA"), 30 U.S.C.A. §§ 1201-1328 (West 1986 & Supp. 1998), to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations." 30 U.S.C.A. § 1202(a).  The FSMCRA "creates the Office of Surface Mining Reclamation and Enforcement (OSM), within the Department of the Interior, and the Secretary of the Interior (Secretary) acting through OSM, is charged with

---

[6] This court realizes this decision, to some extent, contradicts that which was rendered in Sherrod v. American Airlines, Inc., 132 F.3d 1112 (5th Cir. 1998).  The Sherrod court ruled that § 1445(c) prohibits the removal of workers' compensation claims regardless of whether they are pendant to a diversity or a federal question claim.  See id. at 1118-19.  The Fifth Circuit found that the district court should have severed and remanded the state workers' compensation claims.  See id. at 1119.  This court notes, however, that the Sherrod court did not address § 1441(c) in its decision, and § 1441(c) clearly allows the removal of non-removable claims when they are asserted pendant to federal question claims.

19

primary responsibility for administering and implementing [FSMCRA] by promulgating regulations and enforcing its provisions." <u>Hodel v. Virginia Surface Min. & Reclam. Ass'n</u>, 452 U.S. 264, 268-69 (1981); <u>see also</u> 30 U.S.C. §§ 1211, 1224.  The FSMCRA provides a cause of action for injured parties through its citizens' suit provision, which provides:

> Any person who is injured in his person or property through the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter may bring an action for damages (including reasonable attorney and expert witness fees) only in the judicial district in which the surface coal mining operation complained of is located.  Nothing in this subsection shall affect the rights established by or limits imposed under State Workmen's Compensation laws.

30 U.S.C.A. § 1270(f) (West 1986).

To achieve the goal of establishing a "nationwide program," the FSMCRA relies on "a program of cooperative federalism that allows States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs."  <u>Hodel</u>, 452 U.S. at 289.  Any state "wish[ing] to assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations" on nonfederal lands within its borders must submit a proposed program to the Secretary for approval.  <u>See</u> 30 U.S.C.A. § 1253(a).  A state program must include a permitting system that incorporates FSMCRA's environmental protection standards and is

in accord with FSMCRA's enforcement and procedural requirements. See id. If a state fails to propose or implement a satisfactory program, the FSMCRA requires the Secretary to promulgate and implement a federal regulatory program for that state. See id. § 1254.

In order to obtain exclusive jurisdiction over the regulation of surface coal mining and reclamation operations within its borders, West Virginia enacted the WVSMCRA, which authorized and enabled West Virginia to submit for the Secretary's approval a state surface coal mining regulatory program and abandoned mine reclamation program. See W. Va. Code § 22-3-2(c)(4)-(5). The Secretary approved West Virginia's program, see 30 C.F.R. § 948.1-948.3, and West Virginia, therefore, has "exclusive jurisdiction over the regulation" of surface coal mining and reclamation within its borders. See 30 U.S.C.A. § 1253(a).

The WVSCMRA and its regulations require coal mine operators to obtain a permit before conducting surface mining operations on a given tract of land within West Virginia. See W. Va. Code § 22-3-8. The WVSCMRA and its accompanying regulations set forth the information a coal mine operator is required to provide in a permit application. See W. Va. Code § 22-3-9. To obtain and keep a permit, a coal mine operator must comply with the WVSCMRA, which requires coal companies to maintain payment of workers' compensation premiums. See W. Va. Code § 22-3-8(6)(b).

In order to collect the unpaid workers' compensation premiums, the Division brought a claim pursuant to the "citizens' suit" provision of the WVSCMRA, which provides:

> Any person or property who is injured through the violation by any operator of <u>any rule, order or permit issued pursuant to this article</u> may bring an action for damages, including reasonable attorney and expert witness fees, in any court of competent jurisdiction.  Nothing in this subsection affects the rights established by or limits imposed under the state workers' compensation laws.

W. Va. Code § 22-3-25(f) (1998) (emphasis added).

Bluestone, contending that a violation of West Virginia Code § 22-3-8(6)(B) was not a "rule, order or permit issued pursuant to [the WVSCMRA]," but, rather, a violation of the WVSCMRA itself, filed a motion for summary judgment.  In response, the Division claimed that it had predicated its claims under the WVSCMRA citizens' suit provision on the violation of rules issued pursuant to the WVSCMRA.  The Division argued that federal law requires the OSM to approve each provision of the West Virginia surface mining program, whether a statute or regulation, through a rulemaking procedure.  Therefore, all components of the West Virginia regulatory program constitute a "rule" within the meaning of the citizens' suit provision of the WVSCMRA.  The Owners are now contending that these cases arise under federal law because they raise a substantial question concerning whether the federal rulemaking process can convert a state statute into a federal rule.  To answer this question, this court must determine two issues:  (1) whether the citizens' suit provision of the

WVSCMRA, as part of the state regulatory program, became a
federal rule when it underwent the rulemaking process; and (2)
whether the "rules" which the Owners allegedly violated are
"issued pursuant [to the WVSCMRA]."

Federal district courts "have original jurisdiction of all
civil actions arising under the Constitution, laws, or treaties
of the United States."  28 U.S.C.A. § 1331 (West 1993).  A civil
action arises "under the Constitution, laws or treaties of the
United States" when the federal question is apparent from the
plaintiff's well-pleaded complaint, see Franchise Tax Bd. v.
Construction Laborers Vacation Trust, 463 U.S. 1, 9-12 (1983);
Gold-Washing Water & Co. v. Keyes, 96 U.S. 199, 203-04 (1877),
and when the plaintiff's cause of action raises the federal
question, see American Well Works Co. v. Layne & Bowler Co., 241
U.S. 257, 260 (1916).

For an action to raise a federal question for purposes of
§ 1331 jurisdiction, the federal question must appear on the face
of the well-pleaded complaint.  See Franchise Tax Bd., 463 U.S.
at 9-12; Gold-Washing Water & Co., 96 U.S. at 203-04.  This rule
essentially has three implications.  See generally, C. Wright and
A. Miller, Federal Practice and Procedure: Jurisdiction 2d.
§ 3566 (1984 & Supp. 1998).  First, federal question jurisdiction
is not invoked on the basis of an answer raising a federal
defense, see Tennessee v. Union & Planters' Bank, 152 U.S. 454,
464 (1894), or in anticipation that federal law deprives the
defendant of a defense he may raise, see Louisville & Nashville
Railroad Co. v. Mottley, 211 U.S. 149, 152-54 (1908).  Second, a

federal question is not raised when the complaint raises allegations that are not necessary under pleading rules.  See Shulthis v. McDougal, 225 U.S. 561, 570-72 (1912) (finding that a suit to quiet title does not arise under federal law when the plaintiff has alleged that federal law creates doubt as to the title of land because allegations as to the nature of the cloud on title are not proper in a suit to quiet title).  Third, except when federal law has preempted a state law claim, see Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968), a defendant cannot remove a case when the plaintiff, as the master of his complaint, has chosen to forego a federal claim and assert a state-created claim in state court.  See Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913).

The Owners have not removed their respective cases in anticipation that they might assert a federal defense or on the grounds that the Division added federal allegations that were not necessary under pleading rules.  Rather, the Owners claim that the Division, while initially choosing to forego a federal claim, is no longer choosing to do so by virtue of alleging that the Owners violated federal rules.  In other words, the Owners contend that the Division has converted its state claim into a federal claim through its arguments made in opposition to summary judgment.  This court finds that such a conversion occurs only when "a federal cause of action completely preempts a state cause of action [so that] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law."  See Franchise Tax Board v. Construction Laborers Vacation

Trust, 463 U.S. 1, 24 (1983); Avco v. Aero Lodge No. 735, 390
U.S. 557 (1968); Collins v. AAA Rent All, Inc., 812 F. Supp. 642,
643-44 (M.D. La. 1993); Sweeney v. Morgan Drive Away, Inc., 394
F. Supp. 1216, 1217 (D. Colo. 1975). The federal and state
surface mining regulatory scheme was organized so that the state
would have exclusive regulation, but persons could enforce under
either federal or state law. See Molinary v. Powell Mountain
Coal Co., 125 F.3d 231, 236 (4th Cir. 1997), cert. denied, 118 S.
Ct. 1056 (1998). Therefore, an action under federal surface
mining laws does not preempt state surface mining laws.

In addition, a cause of action generally arises under the
law that creates the substantive right and the right to enter
court. When both the substantive right and the right to enter
court arise under federal law, a cause of action raises a federal
question for purposes of § 1331 jurisdiction, but when either the
substantive right or the right to enter court arise under state
law, the claim arises under state law.

In the present case, other than the workers' compensation
claims, the Division's well-plead complaint alleges claims
pursuant to the common law and to the citizens' suit provision of
the WVSCMRA. The parties do not dispute that West Virginia law
creates both the substantive right and the right to enter court
for the common law claims. Nor do they contend that the common
law claims raise a substantial question of federal law.
Therefore, the common law claims do not raise a federal question
for purposes of 28 U.S.C.A. § 1331 jurisdiction.

25

The parties do, however, based on the Division's response to Bluestone's motion for summary judgment, differ as to whether West Virginia law or federal law creates the WVSCMRA claim. The Division contends that West Virginia law, through the WVSCMRA, creates both the substantive cause of action and the right to enter court. The Owners, however, assert that, while the Division's statement was accurate at one time, once the Division alleged that a state law becomes a federal rule when it undergoes the federal rule-making process, federal law created the substantive action and the right to enter court. Therefore, the Division's claim under the citizens' suit of the WVSCMRA is actually a federal claim.

Both federal and state law provide for citizens' suits under their respective surface mining acts. See 30 U.S.C.A. § 1270(f); W. Va. Code § 22-3-25(f). While the Division could, in theory, have brought an action under the FSCRMA citizens' suit provision, it limited its claim in its complaint to the state citizens' suit provision. Therefore, on the face of the Division's well-pleaded complaint, the Division has raised a claim only under the state surface mining law.

The Owners contend that the Division's allegations that the Owners violated 30 C.F.R. § 773.17(c) and the "federal rule of the WVSCMRA citizens' suit" convert the Division's claim under the WVSCMRA to a federal claim. The federal rules themselves do not provide a federal cause of action or the right to enter court. A claimant must rely on the citizens' suit provision of the FSCMRA for his cause of action and right to enter court.

26

Since the Division clearly limited its recovery to those causes of action and remedies provided under the citizens' suit provision of the WVSCMRA, it will be limited to that claim, even if it means a loss on the merits because the state failed to promulgate a regulation, rule, or order under the WVSCMRA addressing compliance with workers' compensation laws.

The remaining question is whether the Division's state-created claim raises a substantial question of federal law which is an essential part of the state-created cause of action, dispositive of the case and has created a genuine controversy between the parties.  The Owners contend that an allegation that "federal" rules were issued pursuant to the WVSCMRA raises a substantial question of federal law which meets all the criteria necessary for this court to assert federal question jurisdiction.

The primary question in these cases is whether the Division's claim raises a "substantial" question of federal law.

> [F]ederal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," "wholly insubstantial," "obviously frivolous," "plainly unsubstantial," or "no longer open to discussion,"  . . .  [T]he question, may be plainly unsubstantial, either because it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy."

<u>Hagans v. Lavine</u>, 415 U.S. 528, 536-37 (1974) (internal citations omitted).

To determine whether a claim is unsound, this court must necessarily look to the merits.  Federal law clearly answers which statute confers rulemaking authority on the OSM.  According to the Administrative Procedure Act, a "rule" is

> the whole or a part of an agency
> statement of general or particular
> applicability and future effect
> designed to implement, interpret,
> or prescribe law or policy or
> describing the organization,
> procedure, or practice requirements
> of an agency and includes the
> approval or prescription for the
> future of rates, wages, corporate
> or financial structures or
> reorganizations thereof, prices,
> facilities, appliances, services or
> allowances therefor or of
> valuations, costs, or accounting,
> or practices bearing on any of the
> foregoing . . . .

5 U.S.C.A. § 551(4) (West 1996).  "Rule making" is an "agency process for formulating, amending, or repealing a rule."  5 U.S.C.A. § 551(5) (West 1996).  An agency's rulemaking capacity originates in a delegation from Congress.  See <u>Chrysler Corp. v. Brown</u>, 441 U.S. 281 (1996).  The statute conferring the power defines and limits the rulemaking authority granted to the agency.  See <u>Bowen v. Georgetown Univ. Hosp.</u>, 488 U.S. 204, 208 (1988).

The OSM, which created the federal rules in question, derives its rulemaking authority from the FSCMRA -- not from the WVSCMRA.  See 30 U.S.C.A. §§ 1211(c)(2); 1235(a), (d).  Therefore, a rule promulgated by the OSM, pursuant to the FSCMRA,

is clearly not issued pursuant to the WVSCMRA.  Since the Division's claim that federal rules are issued pursuant to the WSCMRA is obviously without merit and so contrary to any basic understanding of administrative law, this court finds that the federal question is not a substantial part of the Division's claim.  Therefore, this court does not have federal question jurisdiction over any of the cases.  Since USX asserted diversity jurisdiction in addition to federal question jurisdiction, this court must address whether it may retain jurisdiction over the case against USX on other grounds.

### Diversity Jurisdiction

USX also removed its case on the basis of diversity jurisdiction.  In light of this court's decision that workers' compensation claims are not removable when asserted pendant to claims over which this court has diversity jurisdiction, this court, at a minimum, must sever the workers' compensation claims and remand them to state court.  Therefore, the primary issue addressed in this analysis is whether the court may adjudicate the common law and WVSCMRA claims against USX.

The statute governing when a court may assert diversity jurisdiction over a case provides:

> (a)   The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
>
> (1)   citizens of different States;

29

(2) citizens of a State and
citizens or subjects of a
foreign state;

(3) citizens of different States
and in which citizens or
subjects of a foreign state
are additional parties; and

(4) a foreign state, defined in
section 1603(a) of this title,
as plaintiff and citizens of a
State or of different States.

28 U.S.C.A. § 1332 (West 1993 & Supp. 1998).  A state is not a

"citizen" under § 1332.  See Moor v. County of Alameda, 411 U.S.

693, 717 (1973); Martin Sales & Processing, Inc. v. West Virginia

Dep't of Energy, 815 F. Supp. 940, 942 (S.D.W. Va. 1993); West

Virginia v. Morgan Stanley & Co., Inc., 747 F. Supp. 332, 336

(S.D.W. Va. 1990); West Virginia v. Haynes, 348 F. Supp. 1374,

1376 (S.D.W. Va. 1972).  An action between a state and a citizen

of another state is, therefore, not a suit between citizens of

different states, and diversity jurisdiction cannot exist.  See

Martin Sales, 815 F. Supp. at 942.

The Division contends that this court may not assert

diversity jurisdiction over its case against USX because the

Division, as an alter-ego of the State of West Virginia, is not a

citizen under § 1332.  USX claims that the Division is not the

state and, therefore, is a citizen of West Virginia for purposes

of diversity jurisdiction.

USX claims that the Division is a citizen for purposes of

diversity jurisdiction because the Division has brought suit

pursuant to the "citizens' suit" provision of the WVSCMRA.  The

citizens' suit provision authorizes "any person" to bring an

30

action for damages.  W. Va. Code § 22-3-25(f).  Any "agency, unit
or instrumentality of federal, state, or local government" is a
"person," as defined in the WSCMRA.  W. Va. Code § 22-3-3(s).
Since the term "person" for purposes of the FSCMRA citizens' suit
provision means "private citizens," see United States v. Gorman
Fuel, Inc., 716 F. Supp. 991, 993-94 (E.D. Ky. 1989), and the
WVSCMRA must be construed consistently with the FSCMRA, see
Schultz v. Consolidation Coal Co., 475 S.E.2d 467, 472-476 (W.
Va. 1996); Russell v. Island Creek Coal Co., 389 S.E.2d 194, 199
(W. Va. 1989); Canestraro v. Faerber, 374 S.E.2d 319, 321 (W. Va.
1988), then only an entity which is a private citizen may bring
an action pursuant to the WVSCMRA citizens' suit provision.  USX
contends that the Division cannot simultaneously assert its
citizenship for purposes of the WVSCMRA and deny its citizenship
for purposes of 28 U.S.C.A. § 1332.

The determination that an entity is a citizen for purposes
of the WVSCMRA is not dispositive of whether an entity is a
citizen for purposes of 28 U.S.C.A. § 1332, or vice versa.[7]  It

---

[7] This court believes that, through this argument, USX is
attempting to seek a ruling as to whether the Division is a
citizen for purposes of the WVSCMRA.  In other words, in the
event that this court rules that the Division is not a citizen
for purposes of § 1332, USX could then use this court's ruling in
state court in further support of its argument that the Division
cannot be a citizen for purposes of a WVSCMRA citizens' suit
because it is not a citizen for purposes of § 1332 diversity
jurisdiction.  This court does not believe that its ruling
concerning the Division's status as a citizen for purposes of
§ 1332 jurisdiction is automatically indicative of the Division's
status as a citizen under the WVSCMRA.  This court is not even
going to examine whether the tests for citizenship under the
WVSCMRA and § 1332 require courts to analyze the same factors.
This court's ruling as to the Division's citizenship is ONLY for
purposes of determining whether this court has diversity
jurisdiction.

is plausible that the term "citizen" can have different meanings under various statutes.  Therefore, this court must base its determination of whether the Division is a citizen for purposes of diversity jurisdiction solely on judicial interpretations of § 1332.

When determining whether diversity jurisdiction exists, a court should disregard the nominal parties and look to the real parties in interest.  <u>Martin Sales</u>, 815 F. Supp. at 942.  If the real party in interest is the state, then diversity jurisdiction does not exist.  <u>See id.</u>  The court must, therefore, determine whether the State of West Virginia is the real party in interest or whether the Division is a "citizen" in this suit for purposes of diversity jurisdiction.

> To determine whether a state agency is an alter-ego of the state or is sufficiently independent to constitute a "citizen" in its own right, courts have generally looked to the attributes or characteristics of the agency which tend to associate it with or dissociate it from the sovereign. If the state is more than a nominal or formal party and has a real interest, pecuniary or otherwise, in the outcome of the litigation, the state is a real party to the controversy and diversity jurisdiction does not exist.

<u>Martin Sales</u>, 815 F. Supp. at 941 (internal citations omitted). <u>See also</u> <u>Ford Motor Co. v. Dep't of Treasury</u>, 323 U.S. 459, 464 (1945); <u>Wisconsin v. Maryland Nat'l Bank</u>, 734 F.2d (4th Cir. 1984); <u>Moore v. Abbott Laboratories, Inc.</u>, 900 F. Supp. 26 (S.D. Miss. 1995); <u>West Virginia v. Morgan Stanley & Co., Inc.</u>, 747 F.

Supp. 332, 336 (S.D.W. Va. 1990).   "[A]n agency which is
dependent upon legislative appropriation for its operation or
which channels revenues into the state treasury is entitled to
immunity."  Santiago v. Clark, 444 F. Supp. 1077, 1079 (N.D.W.
Va. 1978).

To determine whether the agency's attributes associate it
with or dissociate it from the state, the court must examine the
legislative intent and purpose for creating the state agency,
including the state's responsibility for managing the particular
obligation, whether the state's management is in the public
interest, the agency's endowment of power from the legislature,
the degree of legislative oversight, and the agency's reliance
upon appropriations from the state legislature to operate its
programs.  Id.

The West Virginia legislature created the workers'
compensation scheme to provide no-fault benefits to workers
injured in the course of their employment.  See Esque v. City of
Huntington, 139 S.E. 469, 470 (W. Va. 1927).  The underlying
purpose of workers' compensation statutes is to shift the burden
of industrial injuries from the taxpayers to businesses, and then
to consumers.  See Weatherford v. Arter, 63 S.E.2d 572, 574 (W.
Va. 1951); Mains v. J.E. Harris Co., 197 S.E. 10, 11 (W. Va.
1938).

Under the West Virginia workers' compensation scheme, the
Governor appoints, with the advice and consent of the Senate, the
Commissioner of Employment Programs for the State of West
Virginia, who, upon his appointment, holds office subject to the

33

will and pleasure of the Governor.  See W. Va. Code § 21A-2-1.
The Commissioner must keep his office at the capitol.  See id.
§ 21A-2-4.  The Commissioner has the power to "[i]nvoke any legal
or special remedy for the enforcement of orders or the provisions
of . . . chapter twenty-three of this code [workers' compensation
chapter]."  See id. § 21A-2-6(13).  The Commissioner may
promulgate rules and regulations to implement the workers'
compensation provisions.  See id. § 23-1-1(c).  The Division is
authorized to determine and collect premium taxes from employers.
See id. § 23-2-4.

The Division asserts several facts that indicate the
Division is an alter-ego of the State.  The West Virginia
legislature appropriates the Division's administrative budget
from special revenues.  Division employees are subject to all
rules and regulations applicable to state employees and are paid
by the State Treasurer, after approval by the auditor.  The
Division receives its primary funding from a special revenue
fund.  The Legislature approves the Division's administrative
expenditures.  The Division can execute contracts in the name of
the State.

USX contends that the Division is not an alter-ego of the
state because it is suing on behalf of the Workers' Compensation
Fund, which is a "separate and distinct fund" used for paying
benefits to injured employees and for payment of the
administrative expenses.  See W. Va. Code §§ 23-3-1(a); 23-3-2.
The Commissioner has a fiduciary obligation to the Fund, and all
interest, earnings from investment and deposits, including the

34

proceeds of this suit, must be deposited to the Fund and "are not treated . . . as part of the general revenue of the State." W. Va. Code §§ 23-3-4(b); 23-2-5; 21A-2-6.  Since a state is a real party in interest "when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the plaintiff will effectively operate," Morgan Stanley, 747 F. Supp. at 337, and the judgment in this case will not affect the general treasury of the state but would serve only to reduce a deficit in the Fund, then the Fund is the only beneficiary.  USX also claims in further support of its claim that the State will not benefit from this litigation that higher premiums, rather then the State, have paid for past deficits.  In addition, USX contends that State legislature does not have to approve the Division's rules, see W. Va. Code § 21A-3-7(c), and that the State is not truly "interested" because it has asserted no contol over the action, see State of N.Y. by Abrams v. General Motors Corp., 547 F. Supp. 703, 707 (S.D.N.Y. 1982), since the Attorney General's Office, which normally represents the State, advised the Division to seek outside counsel, rather than choosing to control this litigation itself.  See W. Va. Code § 21A-2-6(17); 21A-2-18.

The Division claims that West Virginia will benefit from the outcome of this case because it concerns the enforcement of its law and because money will go into a fund to provide citizens with the security of compensation if they are injured on the job. The security of compensation, however, is not really the nexus between the Division's collection activities and the State.  The true purpose of workers' compensation statutes is to defer the

cost of workers' injuries to industry rather than on taxpayers. The Fund may provide for the payment of salaries and administrative expenses, but, again, the purpose of workers' compensation statutes is to shift the entire burden of work-related injuries to industry.  While the Fund is the true monetary beneficiary of the lawsuit, the State, in this particular situation, will theoretically accrue important benefits in "securing compliance with its laws" because taxpayers, in the long-run, are not paying for work-related injuries.  The Division may have increased premiums, rather than using the State's general revenues, to pay for deficits created when employers failed to pay their premiums to the Fund. However, if this court ruled that the State had no overriding interest in securing compliance with workers' compensation laws, then the workers' compensation system would deteriorate. Eventually the State's general revenues would be affected because the State would have to pay for the care of the injured employees.  Therefore, the State has a fundamental interest in ensuring the continuity of employer payments to the Fund.  This court additionally will not address the State's decision to seek outside counsel in this matter; the Division is an alter-ego of the State of West Virginia and is not a "citizen" for purposes of diversity jurisdiction.  Without a basis for original jurisdiction, this court must remand the Division's case against USX.

## Motion for Costs

The Division has asked for an award of costs for expenses it incurred as a result of the improvident removal of these cases. An "[o]rder remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C.A. § 1447(c) (West Supp. 1998). Such an award is discretionary.  See Gibson v. Tinkey, 822 F. Supp. 347, 348 (S.D.W. Va. 1993).  The defendants' removal of the cases, while improvident, was not frivolous or in bad faith and was based on the Division's assertion that federal rules are issued pursuant to the WSCMRA -- an assertion with which this court does not agree.  The Division, in making such claim, created the circumstances causing the removal of these actions. The Division's motion for an award of costs and attorney fees is accordingly **DENIED**.

### CONCLUSION

For the reasons discussed above, the court concludes that each of the above-captioned civil actions was improvidently removed and without jurisdiction.  Separate Orders of even date with the Memorandum Opinion will be entered remanding each case to the respective state court from which it was removed.

The Clerk is directed to send copies of this Memorandum Opinion to all counsel of record.

Dated this 23rd day of March, 1999.

ENTER:

David A. Faber
United States District Judge